LINCOLN KILBOURNE ET AL. *v.* FREDERICK J. FAY, EXECUTOR OF H. T. FAY, ET AL.

AND

AUGUSTUS R. KELLER ET AL. *v.* GILBERT SHAEFFER, ADMINISTRATOR OF JOHN KAUFFMAN.

1. Where a chattel mortgage is declared void by the statute, "as against the creditors of the mortgagor," and the mortgagor dies in possession of the mortgaged property, leaving an insolvent estate, such property becomes assets in the hands of the executor or administrator of the mortgagor, whose duty, as well as right, it is to defend his possession against the claim of the mortgagee, notwithstanding such mortgage was valid as against the mortgagor.

2. An unpaid legacy is not the subject-matter of a chattel mortgage; hence

Kilbourne et al. *v.* Fay, Ex'r, et al.   Keller et al. *v.* Shaeffer, Adm'r.

an assignment of such legacy is not subject to the infirmity of an un-filed chattel mortgage.

THE former case was appealed to the District Court of Franklin county, and reserved for decision in this court.

The latter is a petition in error to the District Court of Fairfield county.

Kilbourne's case was originally commenced in the Court of Common Pleas of Franklin county, by the plaintiffs, against the defendants, to enforce the alleged lien of a chattel mortgage executed by H. T. Fay, in his lifetime, to the plaintiffs, to indemnify them as sureties for him on a promissory note for $10,000, borrowed money, payable six months after date to one William G. Deshler, and bearing date March 30, 1870. A copy of the alleged mortgage, bearing the same date, was filed with the original petition. The granting clause purports to " bargain, sell, assign, and transfer unto said Lincoln Kilbourne and Mary F. Going all the right, title, and interest, legal and equitable, which I have as legatee in the estate of Lincoln Goodale, deceased. Also, all the stock of dry goods and merchandise belonging to me, and in my possession, in Columbus, Ohio, and being the stock of dry goods in the store of H. T. and W. B. Fay, High street, in said city of Columbus.

"And also all goods and merchandise that may by me be hereafter acquired and added to said stock of merchandise, which after-acquired merchandise I hereby covenant and agree to sell, and do hereby sell to, and the same shall become the property of said Lincoln Kilbourne and Mary F. Going, at any time they may choose to enter into the possession of the same, by themselves or either of them, or their or either of their agent or attorney authorized thereto upon the breach of the conditions or either of them herein-after mentioned, and such taking possession of such after-acquired property is hereby declared to be a sufficient sale, transfer, and delivery of the same, and the full consent of myself thereto. To have and to hold said several rights,

266     SUPREME COURT OF OHIO.

Kilbourne et al. *v.* Fay, Ex'r, et al.     Keller et al. *v.* Shaeffer, Adm'r.

goods, and chattels now existing and hereafter to be acquired, when so taken unto possession, upon the following express terms and conditions, to-wit: That if the said H. T. Fay shall pay, or cause to be paid, said loan when it falls due, or if the same shall be renewed in whole or in part, shall pay said renewal or renewals so often as they or either of them shall fall due, and all interest thereon from time to time, then this conveyance and agreement shall become void, otherwise to be and remain in full force and virtue in law."

It also appears in said petition that H. T. Fay, mortgagor, died on the 13th of June, 1870, and that defendant, Frederick J. Fay, was duly appointed and qualified as executor of his last will and testament before the mortgage had been filed in the proper office as provided in the chattel mortgage act; but afterward, on the 29th of June, the mortgage was so filed. And it farther appears that the executor had notice of the existence of the mortgage before any appraisement or sale of the chattels belonging to his estate, and that plaintiffs notified him to separately appraise and sell the chattels covered by the mortgage so that the proceeds might be applied to their indemnification.

The Deshler note having afterward matured and remaining unpaid, and the executor having refused to apply the proceeds of the chattels covered by the mortgage exclusively to the payment thereof, the plaintiffs, as mortgagees, brought their said action on the 29th of March, 1871, to compel the executor of the mortgagor, and the executors of Lincoln Goodale, who were also defendants, to apply so much of the proceeds of the chattels covered by the mortgage, and the legacy aforesaid, as might be necessary to the payment of said note and the interest thereon.

The defendant, Frederick J. Fay, made answer to the plaintiffs' petition as follows:

"At the making of said pretended conveyance of mortgage, the said H. T. Fay was largely indebted to numerous creditors, was insolvent, continued insolvent to the time of his death, and his estate is largely insolvent. From the

DECEMBER TERM, 1876. 267

Kilbourne et al. v. Fay, Ex'r, et al.   Keller et al. v. Shaeffer, Adm'r.

making of said conveyance to his death, the said H. T. Fay, with the consent of the plaintiffs, and in accordance with the understanding between him and the plaintiffs, continued in the actual possession of said stock of dry goods and merchandise, and continued to sell and dispose of the same at retail in the regular course of the business of said store, rendering to the plaintiffs no account of said sales, or the proceeds thereof, and without liability to render such account. After the making of said mortgage conveyance, the said H. T. Fay made frequent additions to said stock of dry goods from purchases made on credit, and died leaving said purchases unpaid for.

" On the 13th day of June, 1870, the defendant was duly appointed and qualified as executor of the said H. T. Fay, and immediately thereupon took possession of the assets and effects of said estate, including said store.

"The affidavit, by statute, required to be made to chattel mortgages, was not made to this mortgage until the 29th day of June, 1870. And the defendant says that said mortgage of said stock of dry goods and merchandise was, and is in law, fraudulent and void, as to the creditors of the said H. T. Fay, and as to the creditors of the said estate, and prays that the same may be so held and declared by the judgment of the court."

To this answer the plaintiffs demurred, and the court sustained the demurrer, and rendered judgment for the plaintiffs. The defendant, Frederick J. Fay, executor, etc., appealed to the District Court of Franklin county, where the cause was reserved for decision in this court. The case is now submitted on demurrer by the plaintiffs to the answer of the appellant.

The original action in Keller's case was brought in the Court of Common Pleas of Fairfield county, by the plaintiffs in error against the defendant in error, on the 10th of February, 1872. The following is the case as stated in the original petition:

That April 10, 1869, John Kauffman, residing in the city of Lancaster, by his mortgage conveyed certain chattels

(being the furniture, etc., of the Mithoff House in that city), to the plaintiffs, the condition being that the mortgage should be void if the mortgagor should pay to Theodore Mithoff, as they become due, the following notes, which said mortgagor, with plaintiffs as his sureties, had given to Mithoff in the purchase of said furniture, etc., to-wit: one at 1 year for $1,468.50; one at 2 years for $1,368.50; one at 3 years for $1,268.50; one at 4 years for $1,168.50; and one at 5 years for $753.50, making $6,027.50; that the wife of the mortgagor indorsed her consent on the mortgage, and the mortgagees made, under oath, the proper statement thereon and filed the same, April 12, 1869, in the office of the county recorder, which was in the township in which the mortgagor resided; and that the mortgage remained so filed till the death of the mortgagor, December 23, 1871, without refiling or any subsequent statement being made or indorsed thereon by the mortgagees; that the mortgaged chattels remained in the same place till the death of the mortgagor, and in his possession, and that they then came into the possession of defendant as his administrator; and that in the meantime no person asserted or claimed, by levy or otherwise, any interest in said chattels adverse to the lien of plaintiffs.

That the mortgagor in his lifetime had paid the first of said notes in full, and all of the second except about $200, which, with the other three notes, remained unpaid at his death.

That the mortgagor's estate is insolvent; he left no real estate; and his personal estate, after deducting the allowances of property and money to his widow and payment of preferred claims, amounts, including the proceeds of the mortgaged property, to the sum of $3,355; and the claims against the estate, including these outstanding notes on which plaintiffs are liable as his sureties, amount to $5,683; all of which have been allowed except $1,211.20, which is in litigation.

That January 30, 1872, the defendant, as administrator, disputing the lien of plaintiffs' mortgage which they as-

serted it was agreed, between him and them, that he might, upon the order of the probate court procured for that purpose, sell the mortgaged chattels with the other furniture, etc., of the Mithoff House, as an entirety at private sale, at not less than the appraised value thereof, and that plaintiffs should hold the same lien and right to the proceeds of the sale of the mortgaged chattels that they had to the chattels before the sale; that the sale was made in pursuance of this agreement, and the mortgaged chattels in the sale brought $2,376.18, which is greatly less than the remaining liability of the plaintiffs, as sureties, as aforesaid.

The plaintiffs claim that their mortgage, notwithstanding their failure to refile the same, is a valid and subsisting lien, and that they are entitled to have the proceeds of the sale thereof applied as far as they will go to the payment of the unpaid notes, or to reimburse them for what they may have to pay in that behalf.

To this petition the defendant demurs, saying that it does not state facts sufficient to constitute a cause of action.

On this issue of law the case was tried in the common pleas, and the demurrer was sustained, and on appeal the district court made the same ruling, and judgment was rendered for defendant in both courts.

To reverse these judgments this proceeding in error was instituted.

*Henry Noble*, for Lincoln Kilbourne:

A legacy is a chose in action, and not a chattel, and we suppose, therefore, that the mortgage of the legacy became effectual between the mortgagees and mortgagor as soon as executed and delivered. The statute provisions as to filing and verifying do not apply to it. *Marsh* v. *Woodbury, Trustee*, 1 Met. 436; 2 Story's Eq. Jur. 28, 1047.

If this assignment of the legacy was valid between the parties to the mortgage, creditors can not claim anything under the chattel law. As between the mortgagees and the executor of the mortgagor, can there be any doubt

that the same rights would be enforced against the decedent?

This action is by sureties in the nature of a bill in equity. All equities will therefore be preserved to the plaintiffs.

II. As to the effect of the mortgage on the stock of goods on hand at the time it was given :

1. We claim that whenever a chattel mortgage has been given for a valuable consideration, and without express fraud between the parties thereto, it is valid and binding between them, whatever may be its effect as to other persons.

We also claim that the creditors, as to whom such a chattel mortgage has been declared void, are creditors who have secured a specified lien on the property mortgaged by levy, or attachment, or by a subsequent mortgage without notice ; and that the word " void " is used in the sense of " voidable " as to creditors or *bona fide* purchasers, without notice only, and neither void nor voidable between the parties. *Wilson* v. *Leslie,* 20 Ohio, 161.

2. As to the mortgage being on a stock of goods that were left in the possession of the mortgagor with power to sell, see *Collins* v. *Myers,* 16 Ohio, 547 ; *Brown* v. *Webb,* 20 Ohio, 389 ; *Freeman* v. *Rawson,* 5 Ohio St. 1 ; *Harman* v. *Abbey,* 7 Ohio St. 218.

3. As to whether the mortgage is void absolutely because the verified statement was not made according to law, or because it was not made until after the death of the mortgagor, see *Hanes* v. *Tiffany,* 25 Ohio St. 554–5.

4. What effect did the *death* of the mortgagor, insolvent, have on the rights which the mortgagees, under this mortgage, would have had against him if living? If he were living, the mortgagees could assert their lien against the mortgagor, and all creditors or other persons who had not, by levy, attachment, mortgage, or purchase in good faith, and without notice, acquired a specific lien or interest in the property. Does the death of the mortgagor impair or affect this right of the mortgages against creditors who

have not obtained such liens? *Gill* v. *Pinney*, 12 Ohio St. 38.

The last two cases cited seem to be in conflict, but they can be easily reconciled so far as this case is concerned. In those cases reference is made to different statutes.

We claim that there is, also, a statutory provision which preserves our rights in this case, and not only authorizes, but requires the executor of the mortgagor to recognize our mortgage and give full effect to the whole instrument as an equitable, as well as a legal lien, on the property described in it which came to his possession.

The 82d section of the act regulating the administration of estates (1 S. & C., 580), provides that every executor and administrator shall proceed with diligence to pay the debts of the deceased, and *shall apply the assets arising from the personal estate and effects* to the payment of debts, in the following order:

*Firstly*—Funeral expenses, etc.

*Secondly*—Allowance of widow, etc.

*Thirdly*—Debts entitled to preference under the laws of the United States.

*Fourthly*—Public rates, taxes, etc.

*Fifthly*—Debts due to all other persons.

And if there be not enough to pay any particular class, they shall be paid ratably, but no subsequent class can be paid at all, until preceding class is paid in full.

By the next section (83) it is provided that "Nothing in the preceding section shall *affect or impair any lien, legal or equitable, which any creditor or other person shall have upon the personal estate of the deceased, during his lifetime.*" Does not this section preserve to these mortgagees whatever rights under their mortgage they had against the mortgagor in his lifetime? and is not that right clearly a lien, both legal and equitable, on the legacy and the stock of goods on hand when the mortgage was given? Under this provision of the express law of the state, we claim that the rights of the plaintiff under their-mortgage, as they existed during the lifetime of H. T. Fay, the mortgagor, not only exist,

but are required to be fully regarded by his executor, and that all the several classes of debts, mentioned in the 82d section, are subject to these rights as preserved to the plaintiffs in the 83d section.

III. This statute not only preserves legal liens but equitable liens. Under this mortgage there is an equitable lien created as to after-acquired goods. *Chapman* v. *Weiman*, 4 Ohio St. 481; *Bloom* v. *Noggle*, 4 Ohio St. 45.

*J. W. Baldwin* and *L. English* for Frederick J. Fay.

The mortgage of the stock of dry goods and merchandise, in the petition of plaintiff mentioned upon the facts admitted by the pleadings, was, and is, in law, fraudulent and void as to this defendant, and as to the creditors of the estate of defendant's testator. Sec. 1 S. & C. Stat. 475; 66 Ohio L. sec. 2, 345.

I. The mortgage is fraudulent and void, so far as it purports to mortgage merchandise not owned by mortgagor at the execution of the mortgage, but to be acquired and purchased thereafter. *Chapman* v. *Weiman*, 4 Ohio St. 481; *Moody* v. *Wright*, 13 Met. 17; *Coe* v. *R. R. Co.*, 10 Ohio St. 391; *Congreve* v. *Evetts*, 10 Exch. 238; *Wilson* v. *Siebert*, 8 A. L. R., 608; 13 How. 110; *Holroyd* v. *Marshall*, 9 Jur. 213; *Megg* v. *Baker*, 3 M. & W., 195; 5 Selden, 216; 18 Ill. 401; *Morrell* v. *Myers*, 3 A. L. R. (N. S.), 18.

II. The mortgage is *per se* fraudulent and void, because power of disposition and sale is evidently reserved therein to the mortgagor until condition broken. *Collins* v. *Myers*, 16 Ohio, 547; *Brown* v. *Webb*, 20 Ohio, 389; *Hannan* v. *Abbey*, 7 Ohio St. 218; *Kleine* v. *Hatzenberger*, 20 Ohio St. 110:

III. The mortgage was void as against the executor of this insolvent testator, for want of filing in the proper office prior to decease of mortgagor, and possession of property by this defendant. 1 S. & C. 469; Ib. 475; *Little* v. *Maxwell*, 4 Ohio St. 240; *Wilson* v. *Leslie*, 20 Ohio, 166; *Thompson* v. *Van Vichten*, 27 N. Y., 568; *Bank of Leaven-*

*worth* v. *Hunt,* 11 Wall. 391; *Griswold* v. *Sheldon,* 4 Comst. 581; *Wood* v. *Lowry,* 17 Wend. 492.

IV. If the mortgage is void as to creditors, and would be so held in any action by them to subject the mortgage property to the satisfaction of their claims, it is also void as to the executor of a mortgagor dying insolvent in possession of the property, and, as such property, at death of testator, becomes assets for payment of general creditors. *Collins* v. *Myers,* 16 Ohio, 547; *Hanes* v. *Tiffany,* 25 Ohio St. 549; *Bethel* v. *Stanhope,* Cro. Eliz., 810; *Shears* v. *Rodgers,* 3 B. & A., 362; *Doe* v. *Ball,* 11 M. & W., 531; *Englebert* v. *Blanjot,* 2 Wharton, 240; *Bayard* v. *Hoffman,* 4 Johns. Ch. 450; *Doe* v. *Bachenster,* 12 Wend. 543; *Babcock* v. *Booth,* 2 Hill. 181; *Edwards* v. *Harben,* 2 Term 589; Roberts on Frauds, 592; *Bate* v. *Jordan,* 1 Kern. 237; *Welch* v. *Beckey,* 1 Penn. 57; *Brunlers* v. *Glominger,* 2 Watts, 226; *Shedd* v. *Anderson,* 3 Leigh, 729; 4 Mass. 356; *Benjamin* v. *Le Baron,* 15 Ohio, 517; *Goody* v. *Gibhart,* 1 Ohio St. 262; *Curd* v. *Wunder,* 5 Ohio St. 92; *Chapman* v. *Warner,* 4 Ohio St. 481; 13 Met., 17; *Bloom* v. *Noggle,* 4 Ohio St. 45.

Any application of the 83d section of administration act to this question seems to us to be begging the whole point in issue. It assumes the very point to be decided in the case. We are denying that plaintiff ever had any lien, legal or equitable, upon these goods of deceased in his lifetime. The section of the executor's law provides only for actual valid *bona fide* liens existing in decedent's lifetime. If there is any validity to this mortgage as against creditors of mortgagor, it did not exist in the lifetime of latter, for at any time their rights prosecuted against the goods were superior to it. Whatever validity it has was given *by the death,* or *after the death* of mortgagor. It does not, therefore, fill the requirement of said section 83, that the lien must exist in lifetime of decedent. But at the moment of decease the rights of creditors are asserted and attach to the property.

*M. A. Daugherty* and *John S. Brasee*, for Keller and Ashbrook.

The questions presented are—

*First.* Was the mortgage a valid and subsisting lien, as between the parties, at the time of the death of the mortgagor, notwithstanding the failure of the mortgagees to refile the same in April, 1870, and April, 1871?

*Second.* And if so, is it a valid lien as against the defendant as administrator of the mortgagor?

We say that at the time of the death of the mortgagor the mortgage was valid and obligatory between the parties, and that the death of the mortgagor did not, in any way, affect their lien.

I. The statute of February 24th, 1846 (S. & C. 475), was in force at the date of this mortgage, that is, sections 1, 4 and 7, which are still in force; section 2 has been changed twice, April 11, 1863 (S. & S. 293), and May 7, 1869 (66 v. 345). This section, as it stands in S. & S. was then in force; in addition to the original provision, directing the deposit with the township clerk, it directs a sworn statement of the amount of the claim to be indorsed. The subsequent change, May 7th, 1869, requires a particular statement when the mortgage is by way of indemnity. Section 7 substitutes the recorder's office for the township clerk's office in cases like the present, where the mortgagor resides in the township where the recorder's office is situate.

The sections 1 and 4 must be construed together.

The act does not anywhere make the instrument void, as between the parties, but only as to certain third persons. *Pain* v. *Mason*, 7 Ohio St. 198; *Day* v. *Munson*, 14 Ohio St. 488; *Wilson* v. *Leslie*, 20 Ohio 161; *Seaman* v. *Eager*, 16 Ohio St. 210.

II. Is the administrator of the mortgagor in any better position in this regard than his intestate?

It is true that in some sense the administrator represents the creditors of the deceased. Every debtor in some sense represents his creditors. The administrator is a representative. He represents the person of the testator or intes-

tate.  Toller on Exr's 133 ; Sections 83 and 84 of the act of March 23, 1840 (S. & C. 566) ; *Gill* v. *Pinney*, 12 Ohio St. 38 ; Williams on Exr's 850 ; *Turwin* v. *Gibson*, 3 Atk. 720 ; *Lloyd* v. *Mason*, 4 Hare 132.

The goods in the hands of Kauffman being subject to the lien of his mortgage to Keller and Ashbrook, his death did not remove that lien or affect it ; and the goods passed to Shaeffer, the administrator, subject to the lien.

If we are correct as to the first question discussed, the plaintiffs could, the day before Kauffman's death, have filed their bill to foreclose the mortgage.  What change of legal or equitable rights was effected by his death that would have prevented these plaintiffs from filing a like bill the day after his death against his administrator?  *Actus dei nemini facit injuriam,* is a maxim as applicable here as in the thousands of other cases to which it has been applied.

McILVAINE, J.  The same question is presented in each of these cases, and it may be stated thus : When a chattel mortgage has not been filed or refiled as provided in the chattel mortgage act, and the mortgagor, who continued in possession, dies in possession of the mortgaged property, leaving an insolvent estate, can the delinquent mortgagee enforce the lien of his mortgage against the personal representative of the deceased mortgagor, who has succeeded to the possession of the property?  The solution of this question depends on the construction of our administration laws and the provisions of the chattel mortgage act.

With a few exceptions declared by statute, all the goods, chattels, moneys, rights and credits of a deceased person are deemed assets to be administered by the personal representative ; and section 83 of the administration act (S. & C. 580–1), provides : " Every executor and administrator shall proceed with diligence to pay the debts of the deceased, and shall apply the assets arising from the personal estate and effects to the payment of debts in the following order :

First. The funeral expenses, those of last sickness, and the expenses of administration.

Secondly. The allowance made to the widow and children for their support for twelve months.

Thirdly. Debts entitled to a preference under the laws of the United States.

Fourthly. Public rates and taxes, and sums due the state for duties on sales at auction.

Fifthly. Debts due to other persons."

Provision is then made for the payment of all debts of each class *pro rata*. Then section 84 provides: "Nothing in the preceding section shall affect or impair any lien, legal or equitable, which any creditor or other person shall have upon the personal estate of the deceased during his lifetime."

Plaintiffs seem to think that the provisions of this 83d section forbid the distribution of the assets in the defendant's hands among the general creditors ratably. But a majority of the court is unable to find any aid to the solution of the main question in its provisions. It will be observed that no lien, legal or equitable, is created or defined by this section. Did the plaintiffs in either of these cases have a lien, legal or equitable, during the lifetime of the deceased as against those for whom the personal representative now claims the funds, is the question. If so, it must be recognized by some law *aliunde* this section.

The plaintiffs claim a lien under their respective mortgages.

In relation to such mortgages the statute of February 24, 1846 (S. & C. 475), provides:

"Sec. 1. That every mortgage or conveyance, intended to operate as a mortgage of goods and chattels, hereafter made, which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void, as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees, in good faith, unless the mortgage, or a true copy thereof, shall be

forthwith deposited as directed in the succeeding section of this act."

The succeeding section, in so far as it applied to these mortgages, respectively, required the deposit to be made in the office of the recorder of the county.

" SEC. 4. Every mortgage so filed shall be void, as against the creditors of the person making the same, or against subequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof, unless within thirty days next preceding the expiration of the said term of one year, a true copy of such mortgage, together with a statement exhibiting the interest of the mortgagee in the property at the time last aforesaid claimed by virtue of such mortgage, shall be again filed in the office of the clerk of the township where the mortgagor shall then reside, if in this state ; and if his residence shall not be in the state, then in the office of the clerk of the township in which such property shall then be."

It will be observed that " deposited " and " filed " are here used as convertible terms, and that the same result follows the failure to make the original deposit, and to file again a true copy of the mortgage with required statement within thirty days preceding the expiration of a year from the date of the first filing.

But right here two propositions are made by the plaintiffs : 1. That an unfiled mortgage is valid as against the mortgagor. 2. That such mortgage being a valid lien as against the mortgagor during his lifetime, it is valid as against his executor or administrator.

The first proposition is conceded. It has been so decided in *Wilson* v. *Leslie*, 20 Ohio, 161, and in other cases. The statute does not declare an unfiled mortgage void as against the mortgagor or his heir or legatee, but only as against creditors, and subsequent purchasers and mortgagees in good faith. In the case cited, the force of the phrase, " shall be forthwith deposited," was under consideration, and, while it was well said, that " until placed in the proper office, a mortgage of chattels in our state would be

void as against other creditors of the mortgagor, and subsequent purchasers and mortgagees whose rights then attach ; but when filed with the clerk or recorder, the instrument becomes valid and effective against all men, except those whose rights have previously attached," still the point decided was, " that a mortgage of personal property, under the statute of 1846, is ' absolutely void' as to other creditors of the mortgagor who assert their rights against the property after its execution and before it is deposited with the recorder or township clerk." It is very true that in Wilson's case, as in many others decided by this court, wherein the chattel-mortgage act was under consideration, expressions have been used, by the judges reporting the cases, to the effect that an unfiled mortgage was valid as against the mortgagor, and also as against creditors who have not asserted their rights against the property, and that such mortgage is only void as against " execution creditors," or " attaching creditors," or " those creditors who assert their rights." These expressions must be understood in the light of the case then before the court; and it will be observed that in none of the reported cases has the question been discussed as to the rights of general creditors, after the death of the mortgagor, as against an unfiled mortgage.

There is no doubt that such unfiled mortgage is absolutely void as against any creditor of the mortgagor, who, in the lifetime of the mortgagor, seizes the property in execution, or attachment, or by any other process known to the law, unless the mortgagee be in actual possession ; nor has this court, to our knowledge, attempted, in any case, to define or limit the modes or processes by which any such creditor may assert his rights against a mortgage, which, as to him, is absolutely void.

Indeed, in a very recent case, *Hanes* v. *Tiffany*, 25 Ohio St. 549, it was held, that " A mortgage void as to creditors is void as against an assignee in trust for the benefit of creditors." This case involved a chattel mortgage valid as against the mortgagor, but void under this statute, as

against creditors, and White, J., says : " It is, however, contended that, as the mortgage is good against the mortgagor, it is also good against the assignee for the benefit of creditors. That the latter stands in no better situation than his assignor. The correctness of this position at common law is admitted ; but not so under the statute ; the mortgagee not having possession of the mortgaged property, the statute declares the mortgage void as against the creditors of the mortgagor ; the assignee took the property under the assignment, and held it for the *exclusive* benefit of creditors. The mode of providing for creditors by way of assignment, in trust for their benefit, is recognized and regulated by statute ; and we see no good reason why their rights may not be as effectually asserted through the assignee as they could be by judgment and execution in case there had been no assignment."

This case was not placed on the ground, as counsel seem to suppose, that the assignee in insolvency was a " subsequent purchaser in good faith," but squarely, that the rights of " creditors " could be asserted through an assignee for their benefit, as they could have been by judgment and execution against the property.

This brings us fairly to the consideration of the second proposition above-named : Is an unfiled chattel mortgage valid as against the executor or administrator of an insolvent mortgagor, where the possession of the property passes directly from the deceased mortgagor to the personal representative ?

I shall not stop to cite cases wherein the executor or administrator has been held to be a trustee for the benefit of the creditors of the estate. The provisions of the 83d section of the administration act, above-quoted, clearly establishes such relation. The ordinary course of administration is the means and process provided by law, whereby creditors of a deceased debtor receive payment. It is true that in the case of a solvent estate the heir has also a beneficiary interest in the trust, as a distributee ; but where the estate is insolvent, the interest of the heir is merely technical, as

280 SUPREME COURT OF OHIO.

Kilbourne et al. *v.* Fay, Ex'r, et al.    Keller et al. *v.* Shaeffer, Adm'r.

all the assets, in such case, are administered for the exclusive benefit of creditors. The analogy between the duties of the office of an administrator of an insolvent estate and those of an assignee of an insolvent debtor are so perfect that we might at once affirm that the doctrine of *Hanes* v. *Tiffany* must control the decision of the present cases.

But, it is urged, that by former decisions of this court, the doctrine of Hanes' case can not apply to the case of an executor or administrator. *Gill* v. *Pinney,* 12 Ohio St. 38, is relied on. In that case, it was held that a mortgage of real estate, not recorded till after the death of the mortgagor, is not, for that reason, inoperative as against the general creditors of the estate. The act to provide for the proof, acknowledgment, and recording of deeds and other instruments of writing, 29 Ohio L. 346, which regulates legal titles and incumbrances of real estate, controlled Gill's case, and although it was in said act provided, that all mortgages shall take effect from and after the time the same are recorded, or, as afterward declared, from the time of delivery to the recorder, yet the 8th section of the act, which declared the effect of not recording as therein prescribed, only provided, that such unrecorded instruments " should be deemed fraudulent so far as relates to any subsequent *bona fide* purchaser having, at the time of making such purchase, no knowledge of the existence of such former deed or other instrument of writing." Now, although Gill's case, which preferred a real estate mortgage not recorded at the death of the mortgagor, to the claims of general creditors, was decided after it had been settled that an unrecorded mortgage must be deferred to the legal lien of a subsequent judgment, it by no means follows that the same conclusion would have been reached, if the registry act had declared unrecorded mortgages absolutely void as against *creditors.*

Our attention has also been called to *Benjamin* v. *Le Baron's Adm'r,* 15 Ohio, 517, wherein it was held, "that an administrator can not maintain an action of trover to recover goods transferred by his intestate to defraud creditors."

At common law, the injured creditor might sue such fraudulent vendee as executor *de son tort,* and recover for his own benefit; but as no such relation as executor of his own wrong is recognized in our system of administration, I can see no good reason why the rightful representative of the estate should not be allowed to prosecute such wrongdoer for the benefit of creditors, to the end that a ratable disbursement should be made among them; yet it is not necessary now either to approve or disapprove of that decision. It is one thing for the representative of an estate to pursue, by action at law, the fraudulent vendee of the deceased fraudulent debtor for the recovery of goods fraudulently transferred; while it is quite a different thing for such executor in possession to defend, for the sole benefit of creditors, such possession against a claim which by statute is declared absolutely void as against creditors.

The earliest case, to our knowledge, in which a distinction is made on account of possession at the time of the death of a fraudulent grantor, is *Bethel* v. *Edward Stanhope,* Croke's Eliz. 810. Thomas Vaughan, having made a gift to his daughter in fraud of his creditors, died in possession of the goods. After the defendant had intermeddled, the daughter, by this gift, took the goods; and afterward administration of the goods of the deceased was committed to defendant. *Scire facias* against the defendant as executor *de son tort.* The question was, whether he could be charged as *executor,* and whether these goods were assets in his hands. After argument, it was adjudged for the plaintiff: " For first, when he meddled with the intestate's goods, although he was neither executor or administrator, and afterward administration was committed unto him, a creditor hath election to charge him as executor *or* administrator. . . . Secondly. All the court held, that this gift of the goods is in itself fraudulent, as appears by the condition; and the covin is expressly found by the jury, and then it is utterly void against the creditors by the 13th Eliz. c. 5, and the intestate died in possession of them; and when the donee afterward took them, it is a trespass against the *ad-*

*ministrator,* for which he hath his remedy; and they are assets in his hands. But if the trespasser takes goods from a testator in his lifetime, so that they never were but a *chose in action* to the executor or administrator, they are not assets until recovered. Wherefore, notwithstanding this taking of them by the donee, yet they always remained as assets in the hands of the *administrator.* And therefore he is chargeable for them as executor *de son tort,* by his intermeddling with them before administration committed, and the goods by law remained always in his possession."

In *Welsh* v. *Beekey,* 1 Penn. 57, it was held that a mortgage of personal property, without delivery of possession or other *indicia* of ownership, is fraudulent as to creditors, and upon the death of the mortgagor, the mortgagee is not entitled to preference over other creditors. In delivering the opinion in the case, Gibson, C. J., said: "In reply to the argument that the contract, although fraudulent as to third persons, is good between the parties, it is proper to remark, that the contest with the executor is virtually a contest with the creditors, it being expressly made a part of the case that the estate is insolvent."

In *Shears* v. *Rogers,* 3 Barn. & Ad. 362, a lease was held to be assets in the hands of the executor, where the testator, who had made an assignment which was void as to creditors under 13 Eliz. c. 5, retained the possession. Lord Tenterden, C. J.: "The authorities show that wherever a man makes a gift of goods which is fraudulent and void as against creditors, and dies, he is considered to have died in full possession with respect to the claims of creditors, and the goods are assets in the hands of the executor." And Patterson, J., said: "As the statute says that this fraudulent deed shall be utterly void and frustrate, and as the lease was in the hands of the testator at the time of his death, it passed to the executor and was assets in his hands."

*Buehler* v. *Gloninger,* 2 Watts, 226, was an action of replevin by the grantee of goods under a contract void as to creditors under the statute of 13 Eliz. The defendants were the administrators of the fraudulent grantor, who

died in possession of the property. On the trial the de-
fendants offered to prove that the estate was insolvent.
For rejecting this testimony the judgment below was re-
versed. In the opinion the court say : " Inasmuch as we
are to take it that the estate of Buehler is insolvent, this is
substantially a contest between the fraudulent grantee and
the creditors of the fraudulent grantor, and, as such, comes
within the prohibition of the statute of 13 Elizabeth. The
administrator is the trustee of the creditors, and in that ca-
pacity is bound to protect their interests. The personal
representatives [heirs] in fact have no interest in the con-
troversy, as the case supposes that the assets are insufficient
to pay the debts of the estate."

There are some reported cases of high authority on the
other side of this question, yet there are still others which
favor the view of those above cited. It is true, most of
them relate to transactions within the statute of 13 Eliza-
beth, which makes void all transfers of property with in-
tent to defraud creditors. But we are unable to distinguish
between the legal effect of a contract void under that stat-
ute, and one " absolutely void as against creditors " under
our chattel mortgage act.

In order to sustain the claims of the plaintiffs in these cases,
it is necessary to give effect to the 1st section of the chattel
mortgage act as though it declared that an unfiled mortgage
is absolutely void as against the creditors of the mortgagor
*during his lifetime;* but after his death it shall be valid as
against them ; thus making the death of the mortgagor a
substitute for the filing of the mortgage. The statute contains
no such limitation or condition ; but it does declare that
every unfiled mortgage, without an actual and continued
change of possession of the things mortgaged, shall be ab-
solutely void as against the creditors of the mortgagor, and
as against subsequent purchasers and mortgagees in good
faith. The creditors of a mortgagor do not cease to be
such by his death ; and so long as they continue to be such
creditors, such mortgage is void as against them. By rela-
tion, the executor or administrator of the mortgagor be-

came trustee for the creditors from the death of the mortgagor. But it is said that, under section 84 of the administration act, all legal and equitable liens on the property during the lifetime of the mortgagor must be first paid, and that such lien existed in favor of the mortgagee *during the lifetime* of the mortgagor. As against whom? We admit that in life the mortgagor could not deny the validity of the mortgage; and the same may be affirmed of the heirs after his death. But the creditors, after the death as before it, were not affected by the mortgage either in law or in equity. This suit is virtually a contest between the mortgagee and the creditors. The latter are now asserting their claims against the assets in the only mode provided by law for the appropriation of the assets of their debtor to the payment of their claims. That the mortgaged property is assets in the hands of the personal representative must be admitted in order to claim the benefit of the 84th section. For it has relation to liens on *assets* in the hands of the executor or administrator, and nothing else. Conflicting claimants now assert their respective rights in the property; and he should prevail who has the better right as between themselves. The statute provides the rule for the decision. The mortgage is absolutely void as against the creditors.

After a careful consideration of these cases, a majority of the court, both upon authority and reason, hold, that where a chattel mortgage is absolutely void as against the creditors of the mortgagor, who dies in possession of the mortgaged property, leaving an insolvent estate, such property becomes assets in the hands of his executor or administrator, to be administered for the sole benefit of such creditors, and disbursed ratably among them, notwithstanding such mortgage be a valid lien as against the mortgagor during his lifetime, and against the distributees of his estate after his death, and that it is the duty as well as the right of such executor or administrator to defend his possession of such property against the claim of such mortgagee.

These conclusions render it unnecessary to consider the other questions in the case of *Kilbourne* v. *Fay*, further than to say that we regard the assignment of the interest of H. T. Fay, as legatee under the will of Lincoln Goodale, to the plaintiff, a sufficient and valid assignment for the purpose stated.   This legacy was not the subject-matter of a chattel mortgage, and its assignment was not, therefore, subject to the infirmity of the mortgage arising from the failure to file it.

In that case, therefore, the demurrer to the answer is overruled, and cause remanded to the district court for further proceedings.

In *Keller* v. *Shaeffer*, the judgment of the court below will be affirmed.

*Judgment accordingly.*

Boynton, J., dissenting.   Finding myself unable to concur with a majority of the court in the decision of the main question involved in the case, I will, as briefly as possible, state the grounds of my dissent.   The question is well stated, in the opinion read, to be : " Is an unfiled chattel-mortgage valid, as against the executor or administrator of an insolvent mortgagor, where the possession of the property passes directly from the deceased mortgagor to his personal representative ?"   It is firmly settled, not only by the weight, but by the whole current, of authority, that, as between the mortgagor, retaining possession of the property mortgaged, and the mortgagee, the mortgage is perfectly valid without that filing, necessary to its validity " against the creditors of the mortgagor and subsequent purchasers and mortgagees in good faith."

And it is fully as well settled that prior to the death of the mortgage-debtor, such unfiled mortgage is equally and as perfectly valid against his creditors, until seized by some process of law.   *Wilson* v. *Leslie*, 20 Ohio, 161 ; *Brown* v. *Webb*, Ib. 389 ; *Thompson* v. *Van Vechten*, 27 N. Y. 568.   In *Wilson* v. *Leslie*, the court, in speaking of the effect of an omission to file the mortgage, says, that " it would not be

void against the mortgagor, if not filed at all. It would not be void against that class of creditors who are equally remiss with the mortgagee, and took no steps to fasten upon the property for the payment of their debts. But when filed, the instrument becomes valid and effective against all men except those whose rights have thus *previously attached.*" In *Thompson* v. *Van Vechten, supra,* it was held, that " a mortgage, not filed, of a chattel, is void as to a creditor at large. But creditors can not question the mortgage until they have obtained process against the property." It is, however, said that where the mortgagor dies in the possession of the property mortgaged, and insolvent, that there is nothing for the heirs to take, and, therefore, that all the assets are administered for the exclusive benefit of the creditors. In other words, that the executor or administrator, in such case, represents the creditor alone, and may insist that, as to him, the mortgage never took effect. A careful examination of the provisions of the statute bearing upon the question satisfies me that this proposition is entirely without foundation, either in law or in fact. The unfiled mortgage is, by the terms of the statute (S. & C. 475), as fully void against creditors where the estate is solvent as where it is insolvent.

The 82d section of the administration act (1 S. & C. 580) provides that every executor or administrator shall apply the assets arising from the personal estate and effects to the payment of debts in the following order:

"*First.* The funeral expenses, those of the last sickness, and the expenses of administration.

"*Secondly.* The allowance made to the widow and children for their support for twelve months.

"*Thirdly.* Debts entitled to a preference under the laws of the United States.

"*Fourthly.* Public rates and taxes, and sums due the state for duties on sales at auction.

"*Fifthly.* Debts due to all other persons.

"And if there be not enough, after paying the said first

class, to pay all the debts of any one of the other classes, all the creditors of that class shall be paid ratably, in proportion to their respective debts ; and no payment shall be made to creditors of any one class until all those of a preceding class or classes, of whose claims the executor or administrator shall have had notice, shall be fully paid."

It will be seen that general creditors belong to the fifth class, and they are not to be paid until after the payment of the funeral expenses, which may include a reasonable amount for a tombstone or monument (S. & S. 356), and the expenses of administration. Now, it seems to me that the proposition admits of no doubt that the funds arising from the sale of property under a mortgage, valid and binding as between the mortgagor and mortgagee, can not be employed to defray the expenses of burial, or the general expenses of administering the estate. Much less is the proposition open to doubt that these funds can be applied or appropriated to the payment of the allowance to the widow and minor children for their support for twelve months. Yet the statute makes it the first duty of the executor or administrator, in distributing the funds of the estate, not subject to lien, to pay out of them, not the claims of the creditors, but debts and obligations that had their origin and were wholly incurred after the death of the mortgagor, as well as those of the last sickness.

It is perfectly obvious that the mortgaged property, or the fund arising from its sale, can not be diverted or appropriated to the payment of any such claim ; or to any claim against the estate that did not exist before the death of the mortgagor. As well might the heir claim the property as the widow and minor children. It is not pretended that the mortgage, for want of filing in the proper office prior to the death of the maker, is void, or that its lien is at all affected or impaired, except as against creditors whose debts were subsisting at the time the maker died. The debts incurred in burial and in the general administration of the estate must look to other funds for their payment.

So, also, the fund out of which the allowance to the widow and children is paid must come from other sources.

Those to whom these obligations are due are in no sense creditors of the mortgagor; and, as to them, the mortgage was as valid and effectual to pass the property as if duly filed on the day of its execution. It must not be forgotten that the general creditors had no specific lien on the property. The most that is claimed is, that, as to them, the mortgage for want of filing is inoperative and void, and that the property covered by it drops into and becomes general assets to be administered; and, like all other personal estate of the deceased debtor, is to be distributed in the manner and in the priority directed by the statute. But the statute expressly declares that no payment shall be made to creditors of any one class, until all those of the preceding class or classes have been fully paid.

The general creditors, belonging as they do to the fifth class, can not receive a farthing until the claims of the four preceding classes have been satisfied. Then what follows? If the mortgage fund is all there is to be administered, one of three things must necessarily follow: (1.) The funeral expenses, and those of the administration of the estate, together with the allowance to the widow and minor children for their support for twelve months, must be paid out of the mortgage fund; or (2.) The positive provisions of the statute prescribing the mode and order of distribution must be disregarded by paying the creditor first; or (3.) The mortgage was, at the mortgagor's death, a perfectly valid and effectual security in favor of the mortgagee against all the world. The first of these propositions will not be contended for, for a moment. And the second can in no case be justified or defended.

But further: By section 83 of the same act it is provided that "nothing in the preceding section shall affect or impair any lien, legal or equitable, which any creditor or other person shall have upon the personal estate of the deceased during his lifetime."

I agree that no lien, legal or equitable, is created or de-

fined by this section of the statute.  But to assert that no
lien existed under the mortgage in controversy, in favor of
the mortgagee, during the lifetime of the mortgagor, as
against those for whom his personal representative now
claims the fund, is, I respectfully submit, a begging of the
question.   The executor is entitled to the fund, if at all,
not as the especial representative of any class of persons,
but as the representative of the estate, and of all classes
that are interested in its distribution.   He is entitled to it
for funeral expenses, for the expenses of the last sickness,
for general expenses of administering the estate, for allow-
ance to widow and children, as well as for the general
creditors.   And he must devote it to these purposes, and
in the order named.

That the mortgagee had a legal lien upon the property,
whose title is in controversy, during the lifetime of the de-
ceased mortgagor, is not questioned.   This being so, if sec-
tion 83 does not afford protection to liens of this character,
it is difficult to discover the object of its enactment, or its
legal efficacy or value; for, if the mortgage is duly filed,
and its validity thereby secured against everybody, it needs
no such protection, upon the death of the mortgage debtor,
as that section purports to afford ; and, therefore, in such
case, there is no necessity of withdrawing property, covered
by such liens, from the operation of section 82.   It was
the manifest purpose and object of the statute to reach
cases of this character.   But, again, the principle asserted
in the present case, has been directly adversely settled by
a former and well-considered decision of this court.

In *Fosdick* v. *Barr*, 3 Ohio St. 471, and *Sidle* v. *Maxwell*,
4 Ohio St. 236, it was held, that, as between a mortgagor
and mortgagee of real estate, it was not necessary to the
validity of the mortgage, that it be recorded, or even left
for record.

And in *Bloom* v. *Noggle*, 4 Ohio St. 45, it was settled,
that such mortgage of realty, under the provisions of the
statute (1 S. & C. 469), did not take effect, as to third par-

ties, until delivered to the recorder of the proper county, to be by him recorded. This rule is firmly established by repeated adjudications of this court. *Bercaw* v. *Cockerill*, 20 Ohio St. 166. Without delivery for record, such mortgage as to creditors of the mortgagor is as ineffectual and inoperative to convey or incumber the estate as if it were never executed. To be without effect, is, in the language of the chattel mortgage act, to be absolutely void.

Yet in *Gill* v. *Pinney*, 12 Ohio St. 38, it was held, that " a mortgage, not recorded until after the death of the mortgagor, is not, for that reason, inoperative as against the general creditors of the estate." Here the question was squarely made, between a mortgagee, whose mortgage had not been left for record during the lifetime of the mortgagor, and which, therefore, at the time of the mortgagor's death was without effect, and the general creditors of the estate.

The interest of the general creditors in the mortgagor's real estate, to the extent required to pay the debts of the estate, is precisely the same as their interest in the personalty. *Piatt* v. *St. Claire*, 6 Ohio, 227; *Douglass* v. *Massie*, 16 Ohio, 271; *McDonald* v. *Aten*, 1 Ohio St. 293. And hence, in *Gill* v. *Pinney*, the creditors asserted their right to the property to be paramount to the interest of the mortgagee under an unrecorded mortgage, as the executor here asserts for the creditors a paramount right to the property mortgaged, because the mortgage was not filed in the proper office before the death of the mortgagor.

In answer to this claim the court, through SCOTT, C. J., said: "A creditor acquires no specific lien by his debtor's death. If he was a mere general creditor before the death, he remains such after. His position with respect to other creditors remains unchanged. He and they have the same right, through the intervention of an administrator, to subject to payment of their debts, if necessary, all the property of their debtor which has passed to his heirs, devisees, or legatees. This right, which constitutes the lien in question, is acquired by no act of diligence on the part of the cred-

DECEMBER TERM, 1876.          291

Kilbourne et al. *v.* Fay, Ex'r, et al.     Keller et al. *v.* Shaeffer, Adm'r.

itor; it arises from no act of the debtor, but results merely from the act of God. It attaches with the change of title, and in consequence of such change. The lien must, therefore, be limited to the property which passes; *and to that in the condition in which it passes.*"

Now, when it is considered that the real estate of a deceased debtor is, as above stated, to the extent needed to supply the insufficiency of the personal property to pay the debts of the estate and expenses of administration, assets in the hands of the executor or administrator, how is it possible that a real mortgage, not left for record until after the death of the mortgagor, can be valid and binding against his general creditors, unless an unfiled mortgage of personalty is also valid? The lien of each was perfect against the mortgage debtor a moment before his death; but, a moment after, one is said to be gone—lost by "no act of the debtor," by "no vigilance of the creditor," but "by the mere act of God." While the other, entirely without effect, and therefore wholly void until delivered for record, survives the death of the maker, an effectual security in the hands of its owner. That the rule in the two cases is precisely the same, and was correctly laid down in *Gill* v. *Pinney,* is, to me, perfectly clear. The mortgaged property passed to the executor as it left the debtor, as fully subject to the lien of the mortgage as it was during the lifetime of the deceased mortgagor.

GILMORE, J., concurred in this opinion.