Burket, J.
It is urged by plaintiff in error that Mr. Brunning has no right to be subrogated *453 to the lien which the mortgage to the insurance company had before its release of record.
The material facts contained in the cross-petition of Mr. Brunning, and found to be true by the court of common pleas are, that after the death of Anton Rechtine, and after his debts had become liens upon his real estate in favor of his creditors, and after his son Ferdinand had received a conveyance of the lands from the widow and children, subject to the mortgage liens, the insurance company urged payment of its mortgage and threatened foreclosure; that Ferdinand Rechtine thereupon requested Mr. Brunning to loan him $1,600 with which, to pay off the insurance company’s mortgage, and agreed to give Mr. Brunning a first mortgage on the same lands to secure the loan, and assured him that all of his father’s debts had been paid, and that there was no other lien upon the lands, except the mortgage to Mrs. Moe for $500.00, and he agreed to obtain a release of that mortgage so that the mortgage to Mr. Brunningshould be the first and best lien. Mr. Brunning agreed to these terms, and made the loan of $1,600 .to Ferdinand Rechtine, and the mortgage to the insurance company was paid off with the money, and was released of record. A mortgage for the $1,600 was then made by Ferdinand Rechtine to Mr. Brunning on the same lands, and was duly recorded, the mortgage to Mrs. Moe' being released of record, so that Mr. Brunning as he understood and believed had the first lien on the lands.
Afterward it was ascertained that the debts owing by Anton Rechtine at his death, and which were a lien on those same lands, had not been paid, and therefore an administrator was appointed on his estate, and a petition filed in the court of com *454 mon pleas to sell the lands. As the lien of the creditors of Anton Rechtine attached to the lands immediately upon his death, and as the lien of Mr. Brunning’s mortgage attached long after the death of Anton Rechtine, the proceeds of the sale of the lands would have to be applied to the payment of general creditors, and Mr. Brunning would get only such surplus as might be coming to Ferdinand after the settlement of the estate of his father. This would be compelling Mr. Brunning to contribute $1,600 of his own money without consideration, for the benefit of the general creditors of Anton Rechtine. This would be wrong, and should be avoided if it can be done without injuring the legal rights of others.
As matters stood after the death of Anton Rechtine, and up to the payment of the insurance company’s mortgage with the money of Mr. Brunning, the creditors were legally entitled to receive only the surplus after payment of the insurance mortgage. They contributed nothing toward paying that mortgage, and they are not entitled to be ben-’ efited by the payment made with the money supplied by Mr. Brunning for that purpose. To subrogate him to the lien of the insurance mortgage before its release, and to set aside that release, and restore its full force for his benefit, will protect him from loss, and will not put the general creditors into a worse condition than they were before Mr. Brunning loaned his money. Such subrogation will add no new burdens to the creditors: When their liens on the lands accrued, the lands were bound for the payment of the mortgage lien of $1,600, and it can make no difference to the creditors, whether payments is made to the insurance company or to Mr. Brunning.
*455 Where money is loaned under an agreement to be used in the payment of a lien on real estate, and it is so used, and the agreement is that the one who loans the money shall have a first mortgage lien on the same lands to secure his money, and through some defect in the new mortgage, or oversight as to other liens, the money cannot be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which the money supplied by him has paid, when it can be done without placing greater burdens upon the intervening lien-holders than they would have borne if the old mortgage had not been released. Mr. Brunning was, therefore, clearly entitled to be subrogated, and there was no error in so ordering. Sidener v. Pavey, 77 Ind., 241; Emmert v. Thompson, 49 Minn., 386; Johnsons. Barrett, 117 Ind., 551; Gilbert v. Gilbert, 39 Iowa, 657; Marsh v. Rice, N. H., 167; Harris on Subrogation, sections 736, 793; Carr v. Caldwell, 10 Cal., 380; see also Sheldon on Subrogation; Amick v. Woodworth, 58 Ohio St., 86; Joyce v. Dauntz, 55 Ohio St., 538.
A more difficult question arises as to the rights of the parties in the matter of the mortgage to Mrs. Mary H. Moe for the sum of $500.00.
Mrs. Moe released her first mortgage for the purpose of allowing the mortgage to Mr. Brunning to have priority, and as to him she is conclusively bound by her release, but as to all other parties she is free to assert and enforce whatever rights she may have.
The mortgage from Anton Rechtine and Elizabeth Rechtine, his wife, to Mrs. Moe was perfect as to the wife, but was defective as to the husband, because his name was left out of the certificate of acknowledgment by mistake of the *456 notary public before whom the mortgage was in fact duly acknowledged by both husband and wife as found by the court. This clearly entitled Mrs. Moe to have the mortgage reformed as to the husband, and as to his wife no reformation was necessary, as the notary correctly certified her acknowledgment. As to the wife, therefore, the mortgage was properly admitted to record, it being made after the passage of the statute allowing married women to execute deeds and mortgages without joining with their husbands, and the mortgage bound whatever interest Mrs. Rechtine had in the lands.
As to Anton Rechtine, the mortgage not having been acknowledged, it was defective and was not entitled to record, and the record thereof was a nullity, and was notice tono one and bound no one. What then was the legal effect of reforming the mortgage as to the husband after his death?
In the case of Van Thorniley v. Peters, 26 Ohio St., 471, this court held that: 11A defective mortgage when reformed will not affect the lien of a judgment rendered between the date of the execution and the reformation of the mortgage.”
It has also been held that a defective mortgage when reformed will not 'affect the rights which general creditors have acquired under an assignment of the mortgagor for the benefit of his creditors, and. it has also been held that an unrecorded mortgage cannot affect the rights of general creditors in such assignment cases.
Can the reformation of a defective mortgage, after the death of the mortgagor, affect the rights or liens which general creditors acquired at the death of the mortgagor? In the case of Ramsdall v. Craighill, 9 Ohio R., 197, this court held that: *457 ‘ ‘The debts of a deceased person are a lien on the land of which he died seized, in default of personal assets, whether devised or cast by descent, which can only be removed by the payment of the debts, or the lapse of time. ’ ’ The rule of this case has been universally approved and followed ever since. Sheldon v. Newton, 3 Ohio St., 494; Overturf v. Dugan, 29 Ohio St., 230. The exact nature of this lien has never been determined, but that to creditors it is a valuable right, cannot be doubted. It is of the same character and nature as the lien or trust in favor of creditors in cases of assignments for their benefit. In assignment cases the title to property passes to the assignee by the act of the owner, the assignor; and in the case of deceased persons the title to the personal property passes to the administrator by operation of law upon the death of the owner, and the real estate vests in the heir, burdened with the debts of the ancestor, subject to be sold by the administrator for the payment of his debts; and the property is held by the assignee in the one case, and by the administrator in the other, in trust for the creditors; and the creditors in either case can only work out the payment of their claims through the said trustees. The process of execution to obtain payment of their claims, is the action taken by the assignee or administrator under the statutes and orders of the court, while in cases of judgment liens the process is by the action of the sheriff under an execution placed in his hands. But in all cases of liens the creditors obtain their money by enforcing the lien, either by causing the trust to be executed, or by execution at law.
In Kilbourne v. Fay, 29 Ohio St., 264, it is said on page 279, that the rights of creditors can be as *458 serted through an assignee for their benefit, as they can be.by judgment and execution against the property; and on the next page it is said, that the analogy between the duties of an assignee and an administrator of an insolvent estate, is perfect. That being so it follows that the rights of creditors can be asserted through an administrator as fully and effectually, but not always as speedily, as by judgment and execution against property. This being so the lien of creditors upon property of a deceased person is of as high a grade as the lien for the benefit of creditors in cases of assignment, or the lien of judgment creditors. While the process of enforcing such different liens is not the same in all cases, the liens themselves are equal in right, and one cannot shove aside, or supersede the other.
It appears in the record that the estate of Anton Rechtine is insolvent, and his creditors having obtained a valid lien on his real estate at his death, by operation of law, and the mortgage to Mrs. Moe being then and for more than a year thereafter, so defective as not to be entitled to record, it cannot now, upon being reformed, be made to take effect as against creditors so as to become prior in right to their lien. This inevitably follows from our recording acts. Section 4133, Revised Statutes, provides that mortgages “shall take effect from the time the same are delivered to the recorder of the proper county for record.” This means that they shall so take effect as to third parties, including creditors. As between the parties to the mortgage no record is required, and as between them, when the mortgage is executed and delivered, the lien becomes perfect.
In a careful review of the force and effect of our recording acts by Williams, C. J., in *459 Betz v. Snyder, 48 Ohio St., 492, I find the following:
“It has been held by this court, as often as the question has been presented, and it has been made in a variety of forms, as well as in numerous cases, that mortgages of real property have no effect, either at law or in equity, until they are delivered to the recorder of the proper county for record, as against third persons acquiring a legal interest in, or lien upon the property. * * * It (the recording statute) was designed to protect the persons who might acquire legal interests in, or liens upon the property.”
In the case at bar the creditors, at the death of Mr. Rechtine, acquired a legal lien upon the lands in question, and the mortgage of Mrs. Moe, when reformed, could not displace that lien, and get in so as to obtain money which would otherwise go to the creditors.
It is urged that the doctrine of the case of Gill v. Pinney, 12 Ohio St., 38, which gave preference to a mortgage recorded shortly after the death of the mortgagor, over his general creditors, would give the mortgage to Mrs. Moe, when reformed, a preference over general creditors. This does not logically follow. In the Gill case the mortgage was perfect, and at common law passed the legal title after condition broken, and upon which ejectment could have been maintained; but the Moe mortgage was not a completed instrument under our statutes requiring mortgages to be signed, attested and duly acknowledged, and under' such a defective mortgage the legal title would not pass, and ejectment could not be maintained at common law upon such defective mortgage without the aid of a court of equity to first reform the mort *460 gage. In the Gill case the mortgagee could himself do all that was required, simply by causing his mortgage to he recorded; while in the Moe case the .mortgagee had to first call in the aid of a court of equity to reform her mortgage, and thereby give it legal force and effect, so as to encumber the legal title.
While the lien in favor of creditors is usually said to be a general lien, this court held it to be a specific lien in Sheldon v. Newton, 3 Ohio St., 494. But even if such lien is general, and that in favor of a mortgagee specific, it does not follow that a later specific lien can displace an earlier general lien. In the Gill case it is said that the general lien of creditors “must be limited to the ■ property which passes, and to that, in the condition in which it passes. If the lands descend to the heir charged with an incumbrance created by the act of the ancestor, the lien of the general creditors must attach to it in the same condition. ’ ’ But in the case at bar there was no present subsisting lien on the lands in favor of Mrs. Moe at the time the general lien of the creditors attached. The defective mortgage had not then ripened into a subsisting lien on the lands. True it amounted to a contract for a lien, but it was not a lien in and of itself. Carr v. Williams, 10 Ohio R., 305; White v. Denman, 16 Ohio R., 59, and Williams v. Spriggs, 6 Ohio St., 585. While it could be reformed, and thereby made a lien, it could not when reformed and made a lien, have priority over the earlier general lien of the creditors.
Judge McIllvaine, in Kilbourne v. Fay, 29 Ohio St., 280, seems to doubt whether the same conclusion would have been reached in the Gill case, if our statute had declared unrecorded mortgages *461 absolutely void as against creditors, and that doubt seems to be well founded. Section eight of our Deeds Act has been materially chang-ed since the decision of the Gill case, and it was accordingly held in Betz v. Snyder, 48 Ohio St., 502, that a mortgage which has no effect is no better than a void one, for a void mortgage is simply without effect.
If the Gill case is still sound law under our present statutes, it must be confined to the exact facts of that case, and cannot be extended, because it already encroaches somewhat upon the logical construction of our recording acts.
We, therefore, hold that the Moe mortgage when reformed, acquired no preference over the general creditors, and that in the distribution of the fund arising from the sale of the interest of Anton Rechtine in the lands at the time of his death, Mrs. Moe must stand and be treated as a general creditor only, having no preference over other general creditors.
After the death of Anton Rechtine, Mrs. Moe held her mortgage, duly executed, acknowledged and recorded, against the interest of Mrs. Rechtine in the lands of which her husband died seized, and if the lands had then been sold by the administrator to pay debts, her mortgage would have been a charge in equity against the dower interest of Mrs. Rechtine. Black v. Kuhlman, 30 Ohio St., 196. Having released her mortgag-e to enable Mr. Brunning to have a first lien, and having received no consideration for such release, and Mrs. Rechtine having paid nothing for such release, and her new mortgage proving worthless, owing to the mistake of all the parties as to the effect of the transactions among them, it is only just and right that Mrs. Moe should have the release of her first mortgage set *462 aside, and that the full force and effect of that mortgage should be restored for her benefit and protection. This leaves Mrs. Rechtine and Mrs. Moe where they stood at the death of M-r. Reehtine, and does no injury to the legal rights of Mrs. Rechtine, in fact places her where she placed herself when she executed the mortgage to Mrs. Moe, and at the same time protects the legal and equitable rights of Mrs. Moe.
Upon the facts found to be true by the court of common pleas, that court did not render the proper order of distribution, and therein committed an error of law, and the circuit court erred in affirming the judgment.
The distribution of the proceeds of the sale, after payment of costs, taxes and expenses of sale, should be as follows:
1. Pay the $1,600.00 and interest due to Mr. Brunning.
2. Ascertain and set aside the money value of the dower estate of Mrs. Rechtine.
3. Distribute the remainder among the general creditors, including Mrs. Moe. Should there not be sufficient to pay Mrs. Moe in full, whatever may be due her after receiving her dividend from the administrator, should be paid out of the money value set aside for Mrs. Rechtine, and the balance of such money value then left, should be paid over to Mrs. Rechtine.
The judgment of the circuit court will be reversed, and proceeding to render such judgment as the circuit court should have rendered, the judgment of the court of common pleas will be so modified as to reach the result above indicated.

Judgment reversed.